UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB,<br><br>　　　　　　　　Plaintiffs,<br>　　　v.<br><br>SALLY JEWELL, Secretary of the Department of the Interior, and THE BUREAU OF LAND MANAGEMENT,<br><br>　　　　　　　　Defendants. | Case No.: C 13-1749 PSG<br><br>**ORDER DENYING AMERICAN PETROLEUM INSTITUTE'S MOTION TO INTERVENE**<br><br>**(Re: Docket No. 20)** |

In this National Environmental Protection Act ("NEPA") action, Plaintiffs Center for Biological Diversity and Sierra Club ("Plaintiffs") challenge Defendants Interior Secretary Sally Jewell ("Jewell") and Bureau of Land Management's ("BLM") decision to lease 17,832 acres of federal oil and gas estate in in Monterey, San Benito, and Fresno counties without properly assessing the effect on the environment.  Nonparty American Petroleum Institute ("API") now moves to intervene in the suit.  Plaintiffs oppose.  Having considered the papers and the arguments of counsel, the court DENIES the motion to intervene.

1

Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

# I. BACKGROUND

A. *CBD I*

Plaintiffs sued BLM and former Interior Secretary Ken Salazar in a related suit before the undersigned, *Center for Biological Diversity v. Bureau of Land Management* ("*CBD I*").[1] In that suit, Plaintiffs targeted the September 14, 2011 sale of four oil and gas leases totaling approximately 2,700 acres located in Monterey and Fresno counties.[2] Plaintiffs alleged that the lease sale was an agency action "significantly impacting the quality of the human environment" requiring preparation of an Environmental Impact Statement ("EIS") under NEPA,[3] which BLM failed to do because it improperly ignored the potential effects of hydraulic fracturing ("fracking") of the Monterey shale formation. The undersigned ruled at summary judgment that, with respect to the non-NSO leases, or leases without "No Surface Occupancy" restrictions, BLM failed to take a "hard look" at the potential impact of fracking and generated an EIS.[4] The undersigned further ordered the parties to submit briefing on a potential remedy for BLM's violation.[5] The remedy hearing date, originally set concurrently to this motion's hearing date, was vacated after the parties indicated they were working towards a settlement.[6]

B. *CBD II*

Following the court's summary judgment order in *CBD I*, Plaintiffs filed the present suit against BLM and Jewell, alleging largely the same legal theories but this time targeting BLM's

---

[1] *See* Case No. 11-06174 PSG, 2013 WL 1405938, at *1 (N.D. Cal. Mar. 31, 2013).

[2] *See id.*

[3] 42 U.S.C. § 4332(C).

[4] *See Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, Case No. 11-06174 PSG, 2013 WL 1405938, at *13 (N.D. Cal. Mar. 31, 2013).

[5] *See id.*

[6] *See CBD I,* Docket No. 77.

2
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

December 12, 2012 oil and gas lease sale covering approximately 17,832 acres of federal land in Monterey, San Benito, and Fresno counties.[7] The undersigned granted Plaintiffs' motion to relate this case to *CBD I*.[8] No dispositive motions have yet been filed in this case, and the parties have indicated that they are engaged in settlement negotiations along with the first case.[9]

### C.  American Petroleum Institute

API is a national trade association committed to promoting the economic and legal rights of the American oil and natural gas industry, including representation of the industry in legal proceedings.[10] API represents over 500 corporate members, including oil and natural gas producers, refiners, marketers, pipeline operators, marine transporters, and service and supply companies.[11]

Vintage Production California, LLC ("Vintage"), a subsidiary of API member Occidental Petroleum, was the winning bidder for three of the leases in the December 12, 2012 sale.[12] Additionally, API members have a strong interest in fracking the Monterey shale formation and other impermeable formations in the U.S., such as the Niobrara and Bakken formations.[13] API alleges many of its members have already invested significant resources in developing oil resources, both in the Monterey shale and elsewhere.[14]

---

[7] *See* Docket No. 1 ¶¶ 1-4.

[8] *See* Docket No. 5.

[9] *See* Docket No. 31.

[10] *See* Docket No. 21 ¶ 3.

[11] *See id.*

[12] *See id.* ¶ 16.

[13] *See id.* ¶ 7.

[14] *See id.* ¶¶ 19-20.

3
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

## II. LEGAL STANDARDS

Intervention is the mechanism for a nonparty to join the litigation as a party without consent of the original parties.[15] Fed. R. Civ. P. 24 provides for both intervention as of right as well as intervention with the permission of the court.

A party may intervene as of right if it demonstrates, upon timely motion, that its rights would be injured if the action were to proceed without it.[16] The Ninth Circuit separates the Rule 24(a) inquiry into four different requirements: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the movant must be situated such that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the current parties to the litigation.[17]

The Ninth Circuit recently abrogated the "federal defendant rule," which categorically prevented any party other than the federal government from intervening as of right at the merits stage of NEPA litigation.[18] In considering whether a private party or state or local government may intervene as of right, the district court should instead apply the traditional Rule 24 test, taking into account the "practical and equitable considerations and constru[ing] the Rule broadly in favor

---

[15] *See U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009).

[16] *See Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1481 (9th Cir. 1993) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

[17] *See Wilderness Soc.*, 630 F.3d at 1177.

[18] *Id.* at 1180. The Ninth Circuit previously ruled that as a matter of law, only the federal government could defend NEPA actions because "NEPA provides no protection for the purely economic interests." *Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989) *abrogated by Wilderness Soc.*, 630 F.3d 1173. But the *Wilderness Soc.* court ruled *en banc* that the "federal defendant" rule violated Rule 24's "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc.,* 630 F.3d at 1179.

4
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

of proposed intervenors."[19]  Nevertheless, the movant bears the burden of establishing all four prongs of the test have been met; failure to satisfy any of the four requirements is fatal to the motion.[20]

Even if no right to intervene exists, the court, upon timely motion, may choose to allow intervention if the party "has a claim or defense that shares with the main action a common question of law or fact."[21]  The district court has broad discretion to decide whether to permit the proposed intervenor to join the litigation, determined in part by "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[22]

### III. DISCUSSION

**A.    Intervention as of Right**

**1)    Is the Motion Timely?**

Timeliness is evaluated according to (1) the stage of the proceedings; (2) the prejudice to the other parties, and (3) the reasons for and the length of any delay that might be caused by intervention.[23]  API moved to intervene less than three months after the complaint was filed.  No case management conference has been held, and neither party has filed any substantive motions.  As a result, the litigation is unlikely to be delayed by API's motion and the original parties have

---

[19] *Wilderness Soc.*, 630 F.3d at 1179.

[20] *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 1996); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

[21] Fed. R. Civ. P. 24(b)(1)(B).

[22] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002) *abrogated on other grounds by Wilderness Soc.*, 630 F.3d 1173.

[23] *See State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997) (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995).

not alleged they will suffer undue prejudice.[24] Plaintiffs do not make any arguments contradicting this finding as they do not oppose API's motion on this ground. Accordingly, the court finds API's motion was timely.

### 2) Does the Movant Claim a "Significantly Protectable" Interest Relating to the Property or Transaction at the Heart of This Action; and Will Disposition of the Action Without Movant Impede or Impair the Movant's Ability to Protect That Interest?

The court next considers whether API has claimed a "significantly protectable" interest. The asserted interest need not be protected by the statute under which the litigation is brought to qualify.[25] "Rather, it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue."[26] In cases implicating public policy, the Ninth Circuit has not always required a specific legally enforceable interest, but instead has found "a sufficient interest for intervention purposes if [the proposed intervenor] will suffer a practical impairment of its interests as a result of the pending litigation."[27]

API asserts two possible legally-protected interests. API first relies on the rights of Vintage, one of its members, who was the high bidder in three of the lease sales.[28] As API points out, ownership of "personal property, contracts, or permits" are assuredly "rights protected by

---

[24] *Cf. Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1397 (9th Cir. 1995) (environmental groups' motion to intervene, filed four months after the initial complaint, was timely even though plaintiff had already moved for a preliminary injunction); *In re Cal. Micro Devices Sec. Litig.,* 168 F.R.D. 276, 277 (N.D. Cal. 1996) (motion for intervention filed at pleading stage was considered timely).

[25] *Wilderness Soc.*, 630 F.3d at 1179.

[26] *Id.*

[27] *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

[28] A trade association may intervene on behalf of its members when (1) "members have a legally protectable interest sufficient for intervention," (2) those interests are "germane to the association's purposes," and (3) "individual project proponents are not necessary participants in the suit." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 n.3 (9th Cir. 2001) (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). API has shown that the interests of promoting oil and gas exploration are core to the association's goals and because the litigation involves only injunctive and declaratory relief, individual members' participation is unnecessary. It is the first element that is the subject of heated contention in this case.

6
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

law."[29] But as API admitted in oral argument, BLM has not actually issued any of the leases, and so Vintage currently holds no legal interest in the properties. API never clarifies exactly what practical impairment Vintage will suffer regarding the oil and gas leases – this leaves the court to wonder, is BLM under any obligation to issue leases to API? Even though Rule 24 does not require the movant to show a strict legal or property interest, if BLM is under no obligation to issue the leases to Vintage, the court is hard-pressed to find that Vintage has any legitimate, protectable interest in the development and exploration of the leases. API thus has not satisfied its burden of demonstrating it will suffer a practical impairment that is sufficiently "direct, non-contingent, and substantial."[30] Further, even if Vintage had some pre-contractual interest in the issuance of these leases, Vintage has not shown that their rights would necessarily be impaired by this litigation. "Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them."[31] Regardless of the outcome of this litigation, if Vintage has some contractual right against API from placing the highest bid, it could bring a separate lawsuit against BLM vindicating those rights. And if that is somehow inadequate as a practical matter, it presumably would be a problem for Vintage, not an organization to which its parent belongs.

API also asserts it has a general economic interest in developing federal shale oil, extending beyond the parcels at issue, which may be adversely impacted by this court's decision. API alleges its members hold oil and gas leases in other shale formations in the United States, such as the

---

[29] *Sierra Club*, 995 F.3d at 1482-83

[30] *California ex rel. Lockyer*, 450 F.3d at 441 (holding that anti-abortion providers, who were currently protected from discrimination by states by a federal appropriations amendment, had shown a "sufficiently direct, non-contingent, and substantial" interest in California's lawsuit challenging that amendment). Of course, should circumstances regarding Vintage's right to a lease at issue change, API could certainly renew its intervention request.

[31] *Id.* at 442 (emphasis original).

7
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

Niobrara and Bakken formations, but does not allege that API's members currently hold oil and gas leases within the Monterey shale formation. Considerations of *stare decisis*" may indicate that the movant will be harmed, but only if the "precedential impact [of the ruling] is clear."[32] For example, courts have held that where the movant's ability to protect their interests in subsequent litigation might be impaired by the court's factual and legal determinations in the current litigation, intervention as of right was warranted.[33] To suggest that this court's decision regarding the Hollister Field Office's treatment of the parcels in question would affect API members' rights in the Niobrara and Bakken shale formations in a similar fashion is tenuous at best. It would be a different case, with clear precedential effect, if API's members held leases within the Monterey shale formation that are governed by the same Hollister Field Office as the leases here. As it stands, however, API has not shown that a decision in this case would have a clear and persuasive *stare decisis* effect on further litigation.[34]

### 3) Would the Movant's Interest be Inadequately Represented by the Current Parties to the Action?

As the court has concluded that API has not shown it has a significantly protectable interest that would be subject to impairment in this litigation, the court need not consider whether API has satisfied the fourth and final element of intervention as of right. Even so, the court notes briefly that API's interests, if any, would be adequately represented by BLM. Where both the movant and the present party seek the same result, however, there is a presumption that the present party will

---

[32] *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993).

[33] *United States v. Oregon,* 839 F.2d 635, 638 (9th Cir. 1988) (residents of mental health facility were entitled to intervene in United States action challenging facility conditions in part because legal and factual determinations made in the litigation would have persuasive *stare decisis* effect on any further litigation brought by the residents).

[34] *See id.*

8
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

adequately represent the interests of the movant.[35] API and BLM both seek the same ultimate objective – a ruling upholding BLM's Finding of No Significant Impact and decision to hold a lease sale. It is presumed that BLM, in defending its own actions against NEPA, will make all appropriate arguments in support of that position. In order to overcome the presumption that BLM will make all of API's arguments, API must make a "very compelling showing," for example, that BLM will likely "abandon or concede a potentially meritorious reading of the statute."[36] API has not done so. API argues that the remedy proposed by BLM in *CBD I*, after the court already ruled that BLM violated NEPA, demonstrates that BLM would not adequately represent API's interests. API alleges that BLM's proposed remedy to conduct an EIS was "far broader" than any remedy API would have proposed. But where the court indicated that "[p]ossible avenues of relief include enjoining further surface-disturbing activity pending EIS analysis, or invalidating the improperly-granted leases,"[37] BLM's proposed remedy, as arguably the less intrusive of these two alternatives, did not show an abandonment of a meritorious claim.

### B. Permissive Intervention

API also contends it should be allowed to permissively intervene in this case. The court has broad discretion in determining whether to allow a party to intervene and is free to deny such a motion if intervention would prejudice existing parties.[38] The movant must first prove that it meets three threshold requirements: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the

---

[35] *See Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006).

[36] *California ex rel. Lockyer*, 450 F.3d at 444.

[37] *Ctr. for Biological Diversity,* 2013 WL 1405938, at *13.

[38] *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

9
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE

applicant's claims."[39] As noted previously, upon the record provided to the court API does not appear to have any protectable interest in the leases in question. Accordingly, it is not clear that API has a claim at all, much less one that would allow the court to find an independent basis for jurisdiction over those claims. At this point, API merely has a generalized interest in developing federal lands within the Monterey shale formation, and its ability to offer an industry perspective of fracking that could aid the court in crafting a remedy, should the litigation progress to that level. Such an interest can be addressed through permission to file an *amicus curiae* brief. "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."[40]

### IV. CONCLUSION

API's motion for intervention as of right, or in the alternative, for permissive intervention, is DENIED.

IT IS SO ORDERED.

Dated: August 9, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[39] *Id.*

[40] *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (internal quotations omitted).

10
Case No.: 13-1749 PSG
ORDER DENYING MOTION TO INTERVENE